UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00672-CHL

KENNETH B.,[1]                                                                                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[2]                                       Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Kenneth B. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief. (DNs 11, 12, 16.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 17.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.      BACKGROUND**

On or about January 31, 2020, Claimant filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on March 31, 2014. (R. at 20, 77, 85, 99, 101, 116, 139, 152, 154, 262-69.) On November 17, 2021, Administrative Law Judge ("ALJ") Susan Brock ("the ALJ") conducted a hearing on Claimant's application. (*Id.* at 39-64.) At the hearing, the ALJ granted Claimant's request to amend his alleged onset date to June 9, 2018, and to request a closed period of benefits from June 9, 2018,

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.
[2] As Martin O'Malley is now the Commissioner of Social Security in place of Kilolo Kijakazi, he is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to change the case caption to reflect the substitution.

through February 1, 2021, thereby dismissing Claimant's application for DIB under Title II of the Social Security Act. (*Id.* at 20-21, 44-45.) In a decision dated December 8, 2021, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 17-38.) In doing so, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since June 9, 2018, the amended alleged onset date. (*Id.* at 23.)

2. The claimant has the following severe impairments: residuals from gunshot wound to hip, depressive disorder, and posttraumatic stress disorder ("PTSD"). (*Id.*)

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

4. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he could stand and/or walk for four hours and sit for six hours out of an eight-hour day. He could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop, kneel, crouch, and crawl. He could tolerate occasional exposure to vibration and unprotected heights. The claimant is limited to unskilled work. He is able to sustain attention, concentration, effort and pace to complete simple tasks that require little independent judgment and minimal variation in two-hour segments throughout the eight-hour day. He could occasionally interact with coworkers, supervisors, and the general public. He could adapt to routine changes in the workplace. (*Id.* at 24-25.)

5. The claimant is unable to perform any past relevant work. (*Id.* at 31.)

6. The claimant . . . was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (*Id.* at 32.)

7. The claimant has at least a high school education. (*Id.*)

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

> 10. The claimant has not been under a disability, as defined in the Social Security Act, from June 9, 2018, through the date of this decision. (*Id.* at 33.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on October 17, 2022. (*Id.* at 5-11, 258-61, 383-85.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2023); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on December 20, 2022. (DN 1.)

## II. DISCUSSION

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2023).

### A. Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have

3

supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

B. **Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 416.920 (2023). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

---

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.909 (2023).

20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.     Claimant's Contentions

Claimant challenged the ALJ's finding regarding his RFC in two ways. (DNs 11, 12). First, Claimant argued that the ALJ "failed to include all of the limitations opined by" consultative examiner ("CE") Brian E. McLean, M.S., L.P.P. ("CE McLean") despite finding his opinion to be persuasive. (DN 11, at PageID # 1072; DN 12, at PageID # 1087-89.) He claimed that these limitations—in particular, CE McLean's finding that Claimant needed frequent redirection—would preclude employment. (DN 12, at PageID # 1089). Second, Claimant argued that the ALJ "erred as a matter of law by failing to articulate the supportability of the medical opinions of the state agency medical and psychological consultants." (DN 11, at PageID #1072; DN 12, at PageID # 1089-92.) The Court will address these arguments below.

#### 1.     CE McLean's Opinion

Claimant argued the ALJ erred by failing to incorporate all mental limitations found by CE McLean into her mental RFC determination. (DN 11, at PageID # 1072; DN 12, at PageID # 1087-89). But as a starting point, the Court notes that "an ALJ need not adopt a medical opinion verbatim, even if he found it persuasive." *Bryson v. Comm'r of Soc. Sec.*, No. 3:20-CV-667-CHB, 2022 WL 945318, at *4 (W.D. Ky. Mar. 29, 2022) (citing *Reeves v. Comm'r of Soc. Soc.*, 618 F.

5

App'x 267, 275 (6th Cir. 2015), and *Green v. Comm'r of Soc. Sec.*, No. 2:20-cv-232, 2020 WL 4877187, at *6 (S.D. Ohio Aug. 20, 2020)).

Here, CE McLean examined Claimant and in the findings from Claimant's mental status exam, CE McLean documented that Claimant's "[a]ttention was distractible, and concentration was scattered, with [Claimant] requiring frequent redirection from [the CE] to remain on task during interview and assessment." (R. at 700.) CE McLean then opined as to Claimant's functional capabilities at the end of his report, stating:

1. [Claimant's] capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks is affected by slight impairment.
2. [Claimant's] ability to tolerate stress and pressure of day-to-day employment is affected by moderate to marked impairment.
3. [Claimant's] ability to sustain attention and concentration towards performance of simple repetitive tasks is affected by moderate impairment.
4. [Claimant's] ability to respond appropriately to supervision, coworkers, and work pressures in a work setting is affected by moderate to marked impairment.

(*Id.*) Thus, Claimant appears to falsely equate CE McLean's examination findings with his opinion as to Claimant's capabilities. However, the ALJ's decision demonstrates that the ALJ considered CE McLean's examination findings and rejected the imposition of related functional limitations.

In his determination of Claimant's mental RFC, the ALJ found that Claimant could "sustain attention, concentration, effort and pace to complete simple tasks that require little independent judgement and minimal variation in two-hour segments throughout the eight-hour day." (*Id.* at 25.) As part of his analysis, the ALJ considered the persuasiveness of CE McLean's opinion and found it to be persuasive. (*Id.* at 30.) The ALJ noted the CE McLean's evaluation was "[t]he most thorough psychiatric evaluation of the [C]laimant" in the record. (*Id.* at 29 (citing *id.* at 697-702).) He summarized CE McLean's findings regarding Claimant's mental status, including that the "exam revealed distractible attention and scattered concentration, requiring frequent redirection to remain on task." (*Id.* at 29.) Despite this, the ALJ emphasized that Claimant's "other neurologic

6

and mental status exams generally showed normal attention span and concentration, intact recall and memory, an ability to follow a three-step command, and cooperative behavior with good eye contact." (*Id.* (citing *id.* at 639, 669-71, 703-11, 720, 723, 727).) Claimant argued that CE McLean's opined "need for frequent redirection [wa]s supported by the evidence of record," citing one examination note of impaired concentration, one examination note that Claimant requires prompting/cuing/repetition/reminders, Claimant's own testimony regarding his attention span, and a third party function report. (DN 12, at PageID # 1088 (citing R. at 323, 325, 328, 339, 410, 746).) In comparing the records cited by Claimant to those cited by the ALJ, it appears the ALJ appropriately supported her decision with substantial evidence and that Claimant has done nothing more than attempt to point to evidence in the record supporting a conclusion opposite to that reached by the ALJ. But "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). The ALJ's decision falls within that zone here, and thus, the Court finds no error in the ALJ's assessment of CE McLean's examination and opinion.

### 2. State Agency Consultants' Opinions

Claimant also argued that the ALJ erred in her articulation of the supportability of the opinions of the state agency medical and psychological consultants and that the ALJ's analysis did not comport with 20 C.F.R. § 416.920c. (DN 11, at PageID # 1072; DN 12, at PageID # 1092-95.) Specifically, he argued that the ALJ only discussed the consistency factor, not the supportability factor, in his analysis of the persuasiveness of the opinions of the state agency medical and psychological consultants. (*Id.*).

The new regulations for evaluating medical opinions are applicable to Claimant's case because he filed his application after March 27, 2017. *See* 20 C.F.R. § 416.920c (2023) ("For claims filed on or after March 27, 2017, the rules in this section apply."). Pursuant to 20 C.F.R. § 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[4] 20 C.F.R. § 416.920c(a). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 416.920c(a), (b)(2). An ALJ is not required to explicitly discuss how he or she weighed the other regulatory factors of relationship with the claimant, specialization, and other factors, since "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions … in [the] case record." 20 C.F.R. § 416.920c(b)(1)-(2). The ALJ is required to "articulate" how supportability and consistency factor into the ALJ's decision. 20 C.F.R. § 416.920c(b)(2).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. § 416.920c(b). *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding

---

[4] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. § 416.927(c)(2) (2023).

8

that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Here, the ALJ found persuasive the opinions of the state agency medical consultants Rebecca Luking, D.O. ("Dr. Luking") and Steven Solvik, D.O. ("Dr. Solvik") and the state agency psychological consultants Dan Vandivier, Ph.D. ("Dr. Vandivier") and Danelle Stevens-Watkins, Ph.D. ("Dr. Stevens-Watkins"). (R. at 30-31.) In doing so, she first summarized the opinions of Drs. Luking, Solvik, Vandivier, and Stevens-Watkins before explaining as to Drs. Luking and Solvik's opinions regarding Claimant's physical RFC:

> The limitation to light work with standing and/or walking for four hours total is supported by the exams noting improved, but continued weakness in the right leg, a slow and shuffling gait, some residual diminished sensation, and otherwise normal strength in the other extremities (Exhibits 2F/26-38; 3F; 6F). The medical evidence also supports postural and environmental limitations, based on the exams noting some unsteadiness with gait and limited range of motion in the lumbar spine, right hip, and both knees. The evidence received at the hearing level does not support greater functional limitations, as he had normal sensation, a shuffling gait, and moderate pain in the right back; findings which are accommodated by these limitations (Exhibit 10F/4-6).

(*Id.* at 30.)  As to the opinions of Drs. Vandivier and Stevens-Watkins, the ALJ explained:

> They are grossly consistent with the opinion from the psychological consultative examiner and, as with that opinion, supported by those exam findings, which included distractible attention and scattered concentration, hypervigilance, and poor coping (Exhibit 5F). These prior administrative findings, which essentially limited the claimant to unskilled work with occasional contact with others and routine work setting, are also supported by the other neurologic and mental status exams, which consistently found no impairment in memory, an ability to follow a three-step command, an ability to repeat phrases and name objects, and normal attention, concentration, and comprehension (Exhibits 2F/6, 35-38; 10F/3, 10). The record is devoid of any other mental status exams or treating notes to suggest greater functional limitations [than] what has been provided here.

(*Id.* at 31.)  Claimant argued that this analysis did not sufficiently articulate the supportability of the opinions of Drs. Luking, Solvik, Vandivier, and Stevens-Watkins as required by the applicable regulation and instead merely disguised consistency analysis as supportability analysis.  (DN 11, at PageID # 1072; DN 12, at PageID # 1092-95.)  20 C.F.R. § 416.920c defines "supportability" as relating to the objective medical evidence and supporting explanation provided by a medical source to bolster its *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence in the record.  20 C.F.R. § 416.920c(c)(1)-(2).  An ALJ's decision must address both factors to satisfy the articulation requirement in 20 C.F.R. § 416.920c(b)(2).  Based on the Court's review of the ALJ's explanation above, the Court finds the ALJ's explanation was sufficient to comply with the regulations.

As one district court has explained, the opinions of state agency medical and psychological consultants are uniquely situated in terms of the ALJ's ability to conduct a supportability and consistency analysis:

> [T]he Court notes the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer—like a state agency physician—who forms her opinion after a holistic review of the medical evidence of record. Consider, for example, a case in which there has been little or no change to the medical evidence of record between the time the reviewer issues her finding and the ALJ conducts a hearing. In that instance, the evidence upon which the reviewer supported her finding—the complete medical record at the time of her finding—would be virtually identical to the evidence with which the opinion is consistent or inconsistent—the complete medical record at the time of the ALJ's hearing. The ALJ is left in a position in which she is unable to consider supportability without simultaneously addressing consistency, and vice versa. A plaintiff might semantically allege error in such a case—saying that the ALJ only addressed consistency because she compared the reviewer's opinion to the entirety of the record. But the ALJ would have still fulfilled the purpose of the regulation: to give a fulsome review to medical opinions and prior administrative findings, paying particular attention both to how the opinions are internally supported and explained, and how they compare to the record as a whole.
> Contrast this with a medical opinion rendered by a treating physician. There, supportability and consistency are more clearly distinguished. The physician supports her opinion with her own treatment notes, objective medical findings, and experience with the plaintiff. Her opinion is consistent (or not) with the entire universe of the medical evidence of record.

*Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023). *See also Griffin v. Kijakazi*, No. 2:22-CV-57-DCP, 2023 WL 3573734, at *9-11 (E.D. Tenn. May 19, 2023); *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:22-cv-240, 2023 WL 262575, at *4 (S.D. Ohio Mar. 24, 2023). This analysis is reflective of the deficiency in Claimant's argument here. As Drs. Luking, Solvik, Vandivier, and Stevens-Watkins did not examine Claimant, there are no individual objective findings from those reviewers from which the ALJ could have assessed supportability. Instead, the ALJ properly considered the supportability of the state agency medical consultants' opinions with respect to the other medical evidence of record that they reviewed in reaching their opinions. Claimant did not point out any specific medical evidence not reviewed

11

by Drs. Luking, Solvik, Vandivier, and Stevens-Watkins that otherwise called into question either the supportability or consistency of their opinions that the ALJ should have and did not address. In the absence of such evidence or argument, the Court finds the ALJ's analysis sufficient to satisfy the articulation requirement and rejects Claimant's argument that there was any procedural error necessitating a remand.

### 3. RFC Generally

Based on the conclusions above, the Court finds that the ALJ's RFC determination was supported by substantial evidence. Her analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). Claimant did nothing more than point to other evidence in the record she claimed supported an opposite conclusion to that reached by the ALJ. However, having found that her decision was supported by substantial evidence, this Court's role is not to second-guess the ALJ's conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

### III. CONCLUSION AND ORDER

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of Record

March 19, 2024

13